**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TIFFANY DANLEY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-1260 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| EQUIFAX INFORMATION SERVICES, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In her governing complaint [1], Plaintiff Tiffany Danley ("Plaintiff") asserts claims against Defendant Equifax Information Services, LLC ("Equifax") for alleged negligent and willful violations of the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.* ("FCRA").[1] This matter is before the Court on the parties' cross-motions for summary judgment, [80] and [82]. For the following reasons, Equifax's motion for summary judgment [80] is granted and Plaintiff's motion for summary judgment [82] is denied. A final judgment under Federal Rule of Civil Procedure 58 will be entered in favor of Equifax and against Plaintiff. Because this ruling resolves all remaining claims in the case, this civil case will be terminated.

**I.   Background**

The following facts are taken from the parties' Local Rule 56.1 statements. See [80-2], [83], [86]. These facts are undisputed except where a dispute is noted. This is an action brought by a consumer for alleged violations of the FCRA. The Court has jurisdiction over this action pursuant to 15 U.S.C. § 1681p.

---

[1] The other three defendants originally named in the complaint—Fortiva Financial, LLC ("Fortiva"), First Premier Bank ("First Premier"), and Nuvell Credit Company, LLC ("Nuvell")—have already been dismissed from this action per the parties' stipulations. See [39], [42], [47], [48], [69], [71].

Plaintiff is a resident of Lombard, Illinois. On July 13, 2017, Plaintiff received an Order of Discharge from the United States Bankruptcy Court for the Northern District of Illinois.

Equifax is a credit reporting agency and a Georgia limited liability company that conducts business in Illinois. Around November 29, 2017, Equifax received a letter, dated November 21, 2017 and signed with Plaintiff's permission, stating:

> Dear Equifax:
>
> Based on the research I conducted online, you are reporting inaccurate information on my credit report. I work hard to maintain my credit and would like my credit report to accurately reflect my credit worthiness. Please review the below accounts:
>
> -ABILITY RECOVERY SERVICES, LLC: DATE OPENED: AUG 14, 2014;
> -AES/ED SERVICES OF A: OPENED DATE: AUG 30, 2005;
> -AES/ED SERVICES OF A: OPENED DATE: AUG 01, 2005;
> -EDFINANCIAL/EDSOUTH: OPENED DATE: AUG 01, 2005;
> -EDFINANCIAL/EDSOUTH: OPENED DATE: AUG 01, 2005;
> -FORTIVA FINANCIAL LL: OPENED DATE: FEB 01, 2013;
> -FIRST PREMIER: OPENED DATE: APR 01, 2014;
> -NUVELL CREDIT COMPANY: OPENED DATE: MAR 01, 2007
>
> The above accounts were discharged in bankruptcy. See the attached Order of Discharge confirming the same. Please report the accounts as discharged in bankruptcy.
>
> In addition, EDFINANCIAL/EDSOUTH is listed more than once and should only reflect one account. Please remove duplicate account[.]
> Per the FCRA, you have 30 days or less to investigate my dispute. Please investigate my dispute and correct the inaccurate information. I would like the dispute results to be mailed to my address, which is listed above. My credit is a serious matter and I value my credit greatly.

[83] at 2; see also [80-4].

At the time of this dispute, Equifax's credit file for Plaintiff showed: (1) Fortiva, First Premier, and Nuvell accounts with a $0 Balance, $0 Amount Past Due, $0 Actual Payment Amount, $0 Scheduled Payment Amount, and "Account Included in Bankruptcy"; and (2) Plaintiff had filed for Chapter 7 bankruptcy and received a Chapter 7 bankruptcy discharge. The credit file

also showed that all three accounts were "closed." Equifax conducted a reinvestigation, but did not change Plaintiff's credit file. On December 1, 2017, Equifax mailed its reinvestigation results to Plaintiff. See [80-3] at 4, ¶ 11 (Declaration of Pamela Smith). Plaintiff denies receiving those results, see [83] at 4, but does not cite anything in the record (such as her own declaration) supporting her denial.

Around January 9, 2018, Plaintiff obtained her Equifax credit file, which showed that the Fortiva, First Premier, and Nuvell accounts continued to be reported with a status of "included in bankruptcy" rather than "discharged in bankruptcy." [86] at 1. Plaintiff has three bankruptcies reporting in her Equifax credit file—two earlier bankruptcies that resulted in dismissals and one later bankruptcy which resulted in a discharge. See [83-1] at 5.

On May 24, 2018, Equifax issued dispute results to Plaintiff regarding a different dispute than the one Plaintiff had made on November 21, 2017. The dispute results showed that Equifax added comments to the Nuvell trade line stating "Bankruptcy Discharged." [86] at 2. The dispute results also showed that Equifax added comments to the Fortiva trade line stating, "Bankruptcy Petition," rather than "Bankruptcy Discharged." *Id*.

On April 23, 2019, Pamela Smith ("Smith"), Equifax's corporate representative, testified at a deposition in this matter. According to Smith, Equifax responds as follows when it receives a consumer dispute letter: "If there are any opportunities for Equifax to make any updates provided based on the contents of the letter or any supporting documents, we will go ahead and make those updates at that time. If we are unable to make any changes at that time, we will initiate the reinvestigation process." [86] at 3.

Smith testified that, upon receiving Plaintiff's November 29, 2017 dispute letter, Equifax did not make any updates to its report of the Fortiva, First Premier, and Nuvell accounts.

According to Smith, this was because "the actual bankruptcy was already reporting as discharged and the accounts were already reporting as included in bankruptcy" and "it is sufficient and acceptable to report those accounts as included in bankruptcy." [86] at 3; see also [83-4] at 5-6. Smith further testified that "included in bankruptcy" is a term that Equifax chooses to report about certain accounts that have gone through bankruptcy, and that Equifax does not report non-dischargeable accounts as "included in bankruptcy." [86] at 4.

Plaintiff states in her declaration that she has been trying to restore her credit and financial situation following her bankruptcy and has suffered stress, anxiety, worry, frustration and anger as a result of Equifax's refusal to report her accounts as "discharged" in bankruptcy. Plaintiff also states that has suffered from headaches and loss of sleep due to constantly thinking about Equifax's refusal to correct the alleged errors in her credit file.

In her governing complaint [1], Plaintiff brings claims against Equifax for negligent violation of the FCRA (Count VII) and willful violation of the FCRA (Count VIII). Plaintiff alleges, in essence, that Equifax's reporting of her three discharged accounts merely as "included in bankruptcy" rather than "discharged in bankruptcy" is inaccurate and misleading; that Equifax either negligently or willfully failed to maintain and follow reasonable procedures to ensure the accuracy of information it reported, in violation of 15 U.S.C. § 1681e(b); and that Equifax either negligently or willfully failed to conduct a reasonable reinvestigation after receiving Plaintiff's dispute, in violation of 15 U.S.C. § 1681i. Currently before the Court are the parties' cross-motions for summary judgment.

**II.    Legal Standard**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by *** citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532-33 (7th Cir. 2013) (citation omitted). Where, as here, the parties have filed cross-motions for summary judgment, "'we view all facts and inferences in the light most favorable to the nonmoving party on each motion.'" *Lalowski v. City of Des Plaines*, 789 F.3d 784, 787 (7th Cir. 2015) (quoting *Wis. Alumni Research Found. v. Xenon Pharm., Inc.*, 591 F.3d 876, 882 (7th Cir. 2010)).

To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250. Summary judgment is proper if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Ellis v. CCA of Tennessee LLC,* 650 F.3d 640, 646 (7th Cir. 2011) (quoting *Celotex,* 477 U.S. at 322). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla

of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Liberty Lobby*, 477 U.S. at 252.

**III.    Analysis**

In both of her claims for violation of the FCRA, Plaintiff seeks recovery against Equifax under 15 U.S.C. §§ 1681e(b) and 1681i.  To prevail under either statute, a plaintiff must prove, among other elements, that "something in his credit report was inaccurate, or at least misleading." *Johnson v. Trans Union, LLC*, 524 F. App'x 268, 270 (7th Cir. 2013) (explaining that a successful plaintiff "must prove that something in his credit report was inaccurate, or at least misleading, to show that the defendants' procedures were unreasonable under 15 U.S.C. § 1681e(b) . . . or that the defendants failed to reasonably reinvestigate under 15 U.S.C. § 1681i"); see also *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004) (to state a claim under Section 1681e(b), plaintiff must sufficiently allege that the credit reporting agency's report contained inaccurate information); *Smith v. Trans Union, LLC*, 2015 WL 1188189, at *5 (N.D. Ill. Mar. 12, 2015) (plaintiff required to show that his credit report contained inaccurate information to prove a claim under section 1681e(b) or 1681i).  This element is the central focus of both parties' motions for summary judgment.

Equifax argues that Plaintiff cannot establish that Equifax's reporting of the Fortiva, First Premier, or Nuvell accounts is inaccurate or misleading because: (1) the reporting complies with the reporting and reinvestigation procedures that were approved by the court in the nationwide injunctive relief settlement in *White v. Experian Info. Sols., Inc*., 8:05-cv-01070-DOCMLG, Doc. 338 (C.D. Cal. Aug. 19, 2008); and (2) Plaintiff has no evidence supporting her position that using the phrase "included in bankruptcy" rather than "discharged in bankruptcy" is inaccurate or materially misleading.  In her cross-motion for summary judgment, Plaintiff argues that Equifax's

6

compliance with *White* is immaterial because *White* "does not control whether the reporting of the furnishers' trade lines in Plaintiff's credit reports is accurate"; rather, Equifax "must comply with the FCRA and Seventh Circuit case law." [84] at 4. Plaintiff further argues that she entitled to summary judgment because "Equifax's reporting of the furnishers' trade lines, though technically accurate, is misleading because it contains a material omission." [88] at 3.

The Court agrees with Plaintiff that the order approving the settlement in *White* is not controlling, though it certainly does support Equifax's position that the phrase "included in bankruptcy" is not inaccurate or misleading. In *White*, the plaintiff brought the same claims that Plaintiff brings here. As a result of the lawsuit, Equifax, along with two other credit reporting agencies, Experian Information Solutions, Inc. and Trans Union, LLC, agreed to "incorporate[e] new procedures that make use of assumptions regarding the likely discharged status of certain prebankruptcy tradelines and civil judgments." [80-1] at 9. As is relevant here, the *White* court approved of the coding of tradelines "to indicate that the account is discharged in the Consumer's Chapter 7 bankruptcy (e.g., by use of the terminology 'included in bankruptcy') and shall update the tradeline … to reflect a zero-dollar or blank account balance and past due balance as to the Consumer who received the bankruptcy discharge, so as to indicate that no debt is due or owing by the Consumer after the discharge date." *Id*. at 10. The fact that Equifax coded the tradelines on Plaintiff's credit report in accordance with the *White* approval order, along with the fact that the three major credit reporting agencies in the United States all have agreed to use the same coding, strongly suggests that use of the phrase "included in bankruptcy" rather than "discharged in bankruptcy" should not be considered inaccurate or misleading.

But even if the *White* approval order did not exist, Equifax would nonetheless be entitled to summary judgment because Plaintiff has failed to come forward with any admissible evidence

7

to support her allegation that Equifax's reporting of the Fortiva, First Premier, and Nuvell accounts was inaccurate or misleading. Plaintiff has conceded, as she must, that the reports are not technically "inaccurate," because the three accounts were, in fact, "included" in her bankruptcy. Plaintiff therefore may proceed, if at all, only on the theory that Equifax's failure to include "discharged in bankruptcy" in the trade lines for the three accounts is misleading because it contains a material omission—namely, that the accounts were "discharged." But Plaintiff fails to identify any "evidence on which the jury could reasonably find" in her favor on this theory. *Liberty Lobby*, 477 U.S. at 252.

Plaintiff relies almost entirely on her own speculation about what a creditor would think when it read Equifax's report of the Fortiva, First Premier, and Nuvell accounts. See, e.g., [88] at 3 ("Without th[e] notation ['discharged in bankruptcy'], any creditor reading Plaintiff's credit report would be misled to believe that these accounts were merely 'included' in the bankruptcy and did not result in a discharge, or else they would report as such."); [84] at 7 ("[O]n May 24, 2018— after this action was filed—Equifax updated its reporting of the Nuvell trade line by adding the words 'Bankruptcy Discharged' to the Additional Information field of the trade line. Under such circumstances, any creditor reviewing Plaintiff's report would be misled and confused as to what was and was not discharged in bankruptcy."). However, Plaintiff is not a creditor and has no apparent basis for speculating about what a creditor would think upon reading Equifax's report. See *Dickens v. Trans Union Corp.*, 18 Fed. Appx. 315, 318 (6th Cir. 2001) (affirming grant of summary judgment for defendant on FCRA claim, where plaintiff relied on his own "mere speculation" that the defendant's notation in his credit report was misleading and had "no evidence that the notation was mis-perceived" by a bank's credit department). Further, Plaintiff does not propose to use an expert or appropriate lay witness to establish that Experian's reports were

misleading. Nor has Plaintiff identified any evidence that she was denied credit or had a more difficult time obtaining credit due to Equifax's allegedly material omission. In short, Plaintiff has offered no explanation about how she plans to prove at trial that Equifax's reports were materially misleading. This is fatal to her claims. See *Barakat v. Equifax Info. Servs., LLC*, 2017 WL 3720439, at *3 (E.D. Mich. Aug. 29, 2017) (granting summary judgment for defendant on plaintiff's FCRA claim, where plaintiff's position that defendant's credit report was misleading "was just his personal opinion after looking at the report himself" and plaintiff "admitted that he did not know how people in the credit reporting industry viewed" the report); *Elsady v. Rapid Global Bus. Solutions, Inc.*, 2010 WL 2740154 (E.D. Mich. July 12, 2010) ("[A] plaintiff's mere assertion that a report was misleading, or even his proof that a lay person would be mislead, is insufficient to establish that a report was misleading and, therefore, inaccurate. At a minimum, a plaintiff must prove that a creditor or consumer of credit reports would be mislead. When the recipient was not mislead, such a showing will be extremely difficult."); cf. *Del Amora v. Metro Ford Sales and Service, Inc*., 206 F. Supp. 2d 947, 953–54 (N.D. Ill. 2002) (granting summary judgment to defendant on plaintiff's FCRA negligence claim because plaintiff lacked "any evidence that [defendant's] policies were in fact inadequate to ensure compliance with the FCRA" and could not "avoid summary judgment with bald speculation that [defendant's] policies may have been deficient").

Plaintiff attempts to rely on testimony from Equifax's corporate representative to support her position that the reports are inaccurate, because Smith "recognize[d] a difference between mere inclusion [in bankruptcy] and discharge, that is not reflected in the terminology used in [Equifax's] reporting." [88] 4. But Ms. Smith did not testify, and it is not a reasonable inference to draw from her testimony, that a creditor who saw "included in bankruptcy" on a trade line—along with

9

information that the account has a zero balance and is closed, and information elsewhere in the report that the bankruptcy has been discharged—might somehow be confused and deny credit to Plaintiff based on that confusion.

Ignoring the deficiencies in her affirmative case, Plaintiff criticizes Equifax for "cherry pick[ing] certain extra-jurisdictional opinions that it claims support its argument," and maintains that all of those cases were either "incorrectly decided or not on point." [88] at 4. Plaintiff asserts that the Court should instead be guided by *Hollins v. Trans Union, LLC*, 2019 WL 2296281 (S.D. Tex. May. 30, 2019). In that case, the court adopted the recommendation of the magistrate judge to deny the defendant's motion to dismiss a FCRA claim, which alleged (as Plaintiff does here) that the term "included in bankruptcy" is inaccurate or misleading when the debt has been discharged. The court concluded that "the notation 'included in bankruptcy' in Hollins's credit report 'could not be said to be accurate as a matter of law' under the Fair Credit Reporting Act— at least at the motion-to-dismiss stage—as the notation is plausibly misleading and could plausibly adversely affect credit decisions." *Id*. at *1. The court expressly recognized, however, that "the plaintiff eventually will have to establish the elements of her claim, which cannot rely on her subjective belief" that "the notation 'included in bankruptcy' was misleading." *Id*. at *2. Plaintiff is trying to do exactly what the *Hollins* court cautioned against: offering no more than her own personal speculation that Equifax's report was misleading.

Finally, Plaintiff has made no effort to distinguish the extensive case law cited by Equifax or explain why it is wrong. For instance, in *Butler v. Equifax Information Services, LLC*, 2019 WL 2498939 (C.D. Cal. Apr. 3, 2019), the court concluded that "[t]here is no meaningful difference between the phrase 'included in bankruptcy' and the phrase 'discharged in bankruptcy' and therefore no likelihood that the use of the phrase 'included in bankruptcy' will be

misinterpreted to the detriment of Plaintiff." *Id*. at *2. According to the *Butler* court, "[e]very Court to consider this issue directly has concluded the same." *Id*. (collecting cases). The Court's own research indicates the same, apart from *Hollins*. See, e.g., *Blanch v. Trans Union, LLC*, 333 F.Supp.3d 789, 793-94 (M.D. Tenn. 2018) (granting motion to dismiss FCRA claim on basis that information furnished by creditors to credit reporting agencies—that debtor's accounts were "included in bankruptcy," closed, and with a zero balance—was not inaccurate or incomplete, where debtor did not dispute that her personal obligation was discharged by her bankruptcy and did not contend that creditors made any effort to compel her to make further payments after the discharge or that she would have had any obligation to do so if they had); *Hicks v. Trans Union LLC*, 2019 WL 4804110, at *6 (N.D. Ga. Aug. 6, 2019) (magistrate judge recommendation that the court grant motion to dismiss FCRA claim on the basis that "listing the Capital One account as closed, with no balance, and a notation that 'Account included in Bankruptcy,' is not inaccurate or misleading"); *Sherfield v. Trans Union, LLC*, 2019 WL 3241176, at *4 (W.D. Okla. July 18, 2019) (dismissing FCRA claim alleging that Trans Union's reporting of tradelines with "included in bankruptcy" notation rather than "discharged in bankruptcy" was inaccurate); *Neabors v. Equifax Info. Servs. LLC*, 2019 WL 3208805, at *2 (S.D. Cal. July 16, 2019) (granting judgment on the pleadings to defendant Equifax; rejecting plaintiff's argument that Equifax violated the FCRA by using term "included in bankruptcy" rather than "discharged in bankruptcy" and concluding that "Equifax's designation of 'Included in Bankruptcy' coupled with the tradeline's status as 'Closed' and the blanks for the balance, amount past due, and other fields reflects factually accurate information"); *Walker v. Trans Union, LLC*, 2019 WL 2884339, at *2 (M.D. Ala. July 3, 2019) (granting motion to dismiss plaintiff's FCRA claim on basis that "there is nothing false or inaccurate" about defendant's reporting of plaintiff's account, where the credit file reflected that

the plaintiff filed for Chapter 7 bankruptcy and that the account was closed and the "pay status" was listed as "account included in bankruptcy"); *Diaz v. Trans Union LLC*, 2019 WL 2389937, at *4 (E.D. Cal. June 6, 2019) (granting judgment on the pleadings in favor of defendant on basis that "plaintiff has not met her burden of establishing that Trans Union's consumer disclosure contained a factual inaccuracy that was either patently incorrect or materially misleading," where defendant reported plaintiff's accounts as included in her bankruptcy, closed, and with a zero balance); *Smith v. Trans Union LLC*, 2019 WL 2074594, at *1 (E.D. Mich. May 10, 2019) (granting judgment on the pleadings in favor of defendant on plaintiff's claim that using notation "included in bankruptcy" is inaccurate or misleading where a bankruptcy has been discharged).

While these cases are not themselves evidence that Plaintiff's credit report is not misleading, other courts' outright dismissal of claims like Plaintiff's underscores the need for Plaintiff to come forward with admissible evidence—not her own speculation—to support her claim. Because Plaintiff has failed to do, Defendant is entitled to summary judgment.

## IV. Conclusion

For these reasons, Equifax's motion for summary judgment [80] is granted and Plaintiff's motion for summary judgment [82] is denied. A final judgment under Federal Rule of Civil Procedure 58 will be entered in favor of Equifax and against Plaintiff. Because this ruling resolves all remaining claims in the case, this civil case will be terminated.

Dated: February 10, 2020

_____
Robert M. Dow, Jr.
United States District Judge